OPINION OF THE COURT
Bernard J. Malone, Jr., J.
The petition is granted to the extent that the petitioners are awarded a judgment annulling as arbitrary and capricious the determination of the Director of the New York State Division of the Budget (hereinafter the Division of the Budget and its *376 Director are referred to collectively as DOB) which retroactively applied the 12% of salary limitation of Civil Service Law § 134 (5) to emergency overtime already earned by petitioners under Civil Service Law § 134 (6) at 1½ times the hourly rate of pay received by petitioners, which overtime rate of pay DOB established for the initial 160 hours of overtime worked by petitioners, and directing the respondents to process the overtime pay requests of the petitioners without applying the 12% of salary limitation.
The five petitioners are employed by the Division of Military and Naval Affairs State Emergency Management Office (DMNA) in salary grade 23 or 25. Four of the petitioners are disaster preparedness representatives and one is a supervisor of nuclear civil protection planning. DMNA administers the state’s, military forces and coordinates the state’s emergency preparedness plans. Petitioners receive annual salaries and are not eligible for overtime pay except in certain circumstances defined by statutes. One of the situations under which petitioners are eligible for overtime pay is set forth in Civil Service Law § 134 (6) as follows: “Notwithstanding any other provisions of law to the contrary, any employee in any title or individual position ineligible to accrue overtime credits under the rules and regulations promulgated by the director of the budget pursuant to the provisions of this section who is required to work beyond a normal workweek during a period deemed? .by the director of the budget to be an extreme emergency, may be granted additional compensation upon the approval of and at a rate established by the director of the budget; provided, however, that such additional compensation shall not exceed one and one-half times the hourly rate of pay received by such employee in his regular position. Such compensation shall be in addition to, and not be a part of, the employee’s basic annual salary and shall not affect or impair any increment or other rights or benefits to which the employee may be entitled under the provisions of this chapter; provided, however, that any differential payable pursuant to this subdivision shall be included as compensation for retirement purposes.”
In response to the September 11, 2001 attack upon the World Trade Center, Governor Pataki issued Executive Order No. 113 (9 NYCRR 5.113) declaring all of New York to be in a state of disaster emergency and directing DMNA to respond appropriately. On October 3, 2001, DOB issued Budget Bulletin G-1030 which provides, in pertinent part:
*377 “Effective September 11, 2001 the Division of the Budget, in consultation with the Governor’s Office of Employee Relations, is instituting a special policy to accommodate employee overtime compensation for essential work associated with the September 11th World Trade Center disaster. This Bulletin provides commissioners and agency heads with additional flexibility to manage personnel resources within existing budget allocations. This bulletin also recognizes the unique and unprecedented nature of the World Trade Center disaster and the drastic measures some agencies must take in deploying staffs that are critical to the State’s efforts.
“overtime
“1. Blanket overtime authorization is granted for staff in Grade 27 and below positions, provided that such overtime is both essential and directly related to activities associated with the State’s response to the World Trade Center disaster. Agency heads will be responsible for determining which overtime requests fulfill the ‘essential and directly related’ criteria.
“2. Staff authorized to incur overtime shall be paid in a manner determined by the agency head. Compensation can be allowed for time actually worked consistent with standard overtime rules and collective bargaining agreements. However, the hourly rate shall not exceed one and one times the regular hourly rate of the employee for time worked over 40 hours per week. Authorized payments for otherwise overtime ineligible staff in Grade 27 and below positions which are submitted to the State Comptroller shall be considered preapproved by the Division of the Budget.”
Petitioners were directed by DMNA to work overtime due to the extreme emergency caused by the World Trade Center attack. The petitioners worked the following amount of overtime hours: Holmes — 383 hours; DiNuzzo — 406 hours; Anderson — 311.25 hours; Hein — 242.25 hours; and Neary — 448 hours. To meet its statutory duty to set the overtime rate DOB, according to paragraph nine of the affidavit of DOB Chief Budget Examiner John E. Burke, set the hourly rate of overtime at IV2 times the regular hourly pay rate of the petitioners. Sometime after the overtime was earned, DOB apparently made an oral determination that the 12% of basic annual salary overtime limitation set forth in Civil Service Law *378 § 134 (5)* should be applied to overtime earned under Civil Service Law § 134 (6) and limited the overtime to be paid to petitioners to 160 hours. This CPLR article 78 proceeding ensued.
The determinative issue is whether DOB has the statutory authority to impose a cap upon the amount of overtime paid under Civil Service Law § 134 (6). DOB takes the position that it has the discretion to impose an overtime cap as well as setting the rate of pay. This court disagrees.
“An administrative agency possesses only the powers expressly delegated to it by the Legislature together with those powers required by necessary implication” (T.D. v New York State Off. of Mental Health, 228 AD2d 95, 107). Administrative acts made in excess of the authority established by the Legislature will be set aside (Boreali v Axelrod, 71 NY2d 1). Arbitrary and capricious conduct on the part of DOB (Matter of Brooks v Forsythe, 189 AD2d 26) or the involved employing agency (Matter of Welsh v Constantine, 194 AD2d 1008) in denying overtime pay earned under Civil Service Law § 134 (6) will be annulled by the courts.
DOB concedes that the 12% overtime salary cap employed by it was taken out of the language of Civil Service Law § 134 (5) and grafted onto the language of Civil Service Law § 134 (6). Civil Service Law § 134 (5) provides as follows: “Notwithstanding any other provisions of law to the contrary, employees in any title or individual position or positions ineligible to accrue overtime credits under the rules and regulations promulgated by the director of the budget pursuant to the provisions of this section who are required to work beyond a normal work week may be granted additional compensation. Such compensation shall be paid upon approval by the director of the budget and at a rate established by the director of the budget, provided however, that such additional compensation shall not exceed twelve per cent of the employee’s basic salary. Such compensation shall be paid in addition to and shall not be a part of the employee’s basic annual salary, and shall not affect or impair any performance advances or other rights or benefits to which the employee may be entitled under the provisions of this chapter, provided however, that any differential payable pursuant to this subdivision shall be included as compensation for retirement purposes.”
*379 Section 134 (5) authorizes overtime pay in certain situations that are not of an extreme emergency nature. The statute directs DOB to set the rate of the overtime pay. Additionally, the Legislature has imposed a 12% of base salary cap upon the amount of overtime pay that can be received in nonextreme emergency situations. The Legislature has invested DOB with no discretion concerning the 12% cap, as it applies no matter what rate of overtime pay DOB sets. Clearly, the 12% cap is not part of the overtime rate setting function the Legislature has delegated to DOB or there would have been no need for the statutory language creating the cap after the statutory language giving the rate setting discretion to DOB. In Civil Service Law § 134 (6) the Legislature grants the overtime rate setting function to DOB but chose not to place a cap upon overtime earned in extreme emergency situations. This court is required to assume that the Legislature intentionally capped nonextreme emergency overtime payments and intentionally did not cap such payments in extreme emergency situations. Furthermore, this court must assume that if the Legislature wanted there to be such a cap upon extreme emergency situation overtime payments it would have placed language into section 134 (6) that was similar or identical to the cap language found in section 134 (5). Respondents have pointed to no statutory or necessarily implied authority giving DOB the power to set aside the Legislature’s decision that there is to be no cap upon overtime pay earned in extreme emergencies, and this court is not inclined to invent such authority to deprive state workers of overtime pay they earned when ordered by respondents to serve the citizens of this state in a time of the most extreme peril.

 Civil Service Law § 134 (5) concerns mundane overtime authorization unrelated to extreme emergencies.